### 9393.  CADDICK MILLING COMPANY *v.* MOULTRIE GROCERY COMPANY.

1. In the construction of a contract, a clause written upon its face, inconsistent with one printed upon the back, will generally be accepted as expressing the intention of the parties, rather than the inconsistent clause printed upon the back.
2. In construing a contract it is proper, in order to arrive at the intention of the parties, to consider the correspondence between them leading up to and consummating the contract.
3. The true construction of the contract in this case is that the time of shipment of the flour is limited to the months of November and December, and that as to this provision time is of the essence of the contract. The plaintiff, not having ordered out the flour within the time specified in the contract, had no right of action for breach of contract against the defendant for failure to deliver the remainder of the flour.

DECIDED JULY 12, 1918.

Action for breach of contract; from Colquitt superior court— Judge Thomas. November 24, 1917.

The Caddick Milling Company contracted to sell to the Moultrie Grocery Company 500 barrels of flour. The contract was dated November 10, 1914, and the material part of it is as follows:

"The Caddick Milling Company, Grandview, Indiana, sold to Moultrie Grocery Company, Moultrie, Ga., the following articles upon terms and conditions named below: Ship to Moultrie Grocery Company at Moultrie, Ga. Ship via ———. Date of shipment Nov. and Dec. Terms sight draft. Net cash—arrival draft b-l attached.

Make draft through ———

| No. bbls. | Brand. | Pkg. | Price. |
|-----------|--------|------|--------|
| 500 | Sunlight | | 5.45 |

Delivered.

This sale is made subject to the terms and conditions printed on the back hereof, which are hereby agreed to and are not subject to change or countermand without the written consent of both parties. This order is taken subject to the confirmation of the Caddick Milling Company, Grandview, Indiana. (Signed) Moultrie Grocery Company. By Thad Adams, Buyer. Salesman Valdosta Brokerage Co.

Conditions covering sale of flour and feed, adopted by the Southeastern Miller's Association, November 12, 1907.

1. Terms—Sight draft with bill lading attached. 2. Unless otherwise specified, purchases must be ordered out within 30 days from date of contract, with a maximum possible limit of 90 days from date of contract. If not so ordered out within thirty days or within contract shipment period, flour is, without notice from seller, subject to carrying charges of 5¢ per barrel per month or fraction thereof, and feed 25¢ per ton per month or fraction thereof. Such carrying charges become due and payable at the beginning of each 30 days period after the first thirty days of free storage, the buyer hereby agreeing to pay the same at the beginning of each 30 days period. Failure to order flour out on demand of shipping instructions at expiration of the maximum 90 days period, or to pay accrued carrying charges on demand, gives seller the right to cancel contract or resell the goods for buyer's account. Upon failure of seller to make shipment of 30 days contract within 14 days from receipt of specifications for such shipment, flour is without notice from buyer subject to a credit of ten cents per barrel per month or fraction thereof, and further failure to ship within the maximum 90 days limit entitles the buyer to cancel the contract or buy similar quantity and grade of goods for seller's

account. No verbal conditions or modifications to alter this contract."

The Grocery Company, in November and December (December 4th and 29th, 1914), ordered out 300 barrels of this flour, which the milling company shipped to the grocery company. The grocery company claims to have ordered the remainder of the flour, 200 barrels, from the milling company on January 30, 1915. It further claims that the milling company failed and refused to ship these 200 barrels in compliance with its contract, and it thereafter brought suit against the milling company for damages for breach of contract, setting up that in the meantime the price of flour had advanced and that it had been damaged in a certain amount as set forth in the petition. The defendant admitted that on November 10, 1914, it entered into a contract with the plaintiff to ship 500 barrels of flour, but claims that the shipment was to be made and the flour to be ordered out in November and December, and that the plaintiff failed to order out the balance of the flour, to wit, 200 barrels, within the time provided for delivery by the terms of the contract, and that for this reason it was not liable to the plaintiff in any amount whatever. On November 2, 1914, a telegram signed by the Valdosta Brokerage Company, addressed to Caddick Milling Company, was forwarded, the telegram being as follows: "Ship Moultrie Grocery Company one hundred barrels Sunlight Self Rising Flour five forty-five delivered, and book them one thousand barrels of same their option sixty days. Wire confirmation to Valdosta." The telegram in reply to this from the Caddick Milling Company, addressed to the Valdosta Brokerage Company, was as follows: "Have booked 100 prompt. 500 within sixty days." Then the contract, copy of which is set out, signed by the Moultrie Grocery Company was forwarded to the Caddick Milling Company. A confirmation of this, signed by the Caddick Milling Company and addressed to the Moultrie Grocery Company, dated November 10, 1914, was forwarded to the Moultrie Grocery Company, of substantially the same form as the contract signed by the Moultrie Grocery Company, except that instead of the clause "Date of shipment November and December" this confirmation has "Time of shipment November and December." Under date of November 21, 1914, apparently the date when the confirmation of the order was forwarded, the defendant wrote to the

plaintiff a letter as follows: "We have received signed order of 500 barrels Sunlight Flour for November and December shipment, and are enclosing confirmation for sale of same. The one hundred ordered for prompt shipment will leave here to-morrow morning. We regret that we can not book your order for more than this of Sunlight Flour." Then follow letters from the plaintiff to the defendant, ordering out 150 barrels on December 4th, and 150 barrels on December 29th. On January 30, 1915, the plaintiff claimed to have mailed to the defendant a letter reading as follows: "Please ship us balance of Sunlight Flour we have booked with you on contract." Defendant denied receiving this letter. A letter from plaintiff to defendant under date of February 17, 1915, was as follows: "On January 30th we wrote you to ship balance of Sunlight we had booked with you on contract. You failed to reply to this. We waited ten days and wired you February 10th: 'Rush shipment flour we have ordered.' You replied saying that you had not received specifications and had no order in effect with us. We have your confirmation for 100 barrels, dated Nov. 6th. We have your confirmation for 500 barrels, dated Nov. 20th. Our records show that you shipped 100 barrels Nov. 21st; also 150 barrels December, and the other 150 you shipped January 13th, and reached us January 26th. We ordered the next car January 30th, as shown by above-quoted letter. The three cars made a total of 400 barrels. You owe us 200 barrels more on contract." In reply to this the defendant wrote to plaintiff on February 19, 1915, the following letter: "In reply to your letter of the 17th inst., our records clearly show that you bought this flour from us for November and December shipment. You failed to furnish shipping instructions according to contract. We do not feel that you have any right to expect us to make shipment to you in February. If you will refer to our confirmation, you will note that it states plainly the time of shipment to be November and December. In reading the conditions of the contract, it states, 'Unless otherwise specified,' in paragraph two, and it being otherwise specified, eliminates that paragraph entirely, and we do not feel that you have anyone to blame except yourself, as we complied with our part of the contract to the letter."

On the trial of the case the jury found for the plaintiff. The defendant filed a motion for a new trial, based upon the general

grounds and upon grounds complaining of the admission in evidence of the letter from the plaintiff to the defendant dated January 30, 1915, and of the refusal of certain written requests to charge, presented by the defendant, and of failure of the court to charge in certain particulars as set out in the motion. The trial judge overruled the motion, and the defendant excepted.

*Parker & Gibson,* for plaintiff in error. *W. F. Way,* contra.

HARWELL, J. (After stating the foregoing facts.) The main question in the instant case arises upon the construction of the contract between the parties. Was the time of shipment limited to the months of November and December, or was it limited to ninety days from the date of the contract, to wit, November 10, 1914? If limited to the months of November and December, the plaintiff should have ordered out the flour during those months, and, having failed to do so, no right of action would lie in its favor.

The cardinal rule of construction of a contract is, of course, to give effect to the intention of the parties, if that can be arrived at. Civil Code (1910), § 4266. If there are apparently inconsistent clauses in the contract, one written upon the face of the contract in a blank prepared for that purpose, and the other printed upon the back of the contract, that which is written by the parties in the face of the contract will generally be accepted, rather than the inconsistent clause printed upon the back thereof. Civil Code (1910), § 4268 (6); *Augusta Factory* v. *Mente,* 132 *Ga.* 503, 508 (64 S. E. 553); *Surles* v. *Milikin,* 97 *Ga.* 485 (25 S. E. 322).

From the correspondence which took place between the parties in connection with the signing of the contract, immediately before and immediately thereafter, it was the evident intention of the parties that the time of shipment should be limited to November and December. The first telegram, which was sent to the milling company on November 2, specified *sixty days.* The reply of the milling company, on November 3, said, *"500 within sixty days."* (Italics ours.) The order from the grocery company, a copy of which is set out in the statement of facts, specified: *"Date of shipment November and December."* (Italics ours.) The confirmation of this from the milling company to the plaintiff was of the same form, except that, instead of the clause above quoted, it specified, in the face thereof, *"Time of shipment November and De-*

*cember."* (Italics ours.) The letter from the defendant to the plaintiff dated November 21, which enclosed the confirmation of the order, said, "We have received signed order for 500 barrels Sunlight flour *for November and December shipment* (italics ours), and are enclosing confirmation of same." It is therefore readily apparent, it seems to us, from this correspondence which took place between the parties, that it was contemplated that the shipment of the flour should be made during the months of November and December. It is proper, of course, to take into consideration this correspondence between the parties, in the construction of this contract and in arriving at the intention of the parties. Civil Code (1910), §§ 4267, 4268 (1); *Central R. &c. Co.* v. *Macon,* 43 *Ga.* 605, 647; *Armistead* v. *McGuire,* 46 *Ga.* 232; *Simpson* v. *Sanders,* 130 *Ga.* 265, 271 (60 S. E. 541); 17 Cyc. 669 (v); 671 (xiv), (xvi).

Moreover, upon a careful reading of the contract, we do not think that the clause in the face of the contract, limiting the shipment to the months of November and December, is really inconsistent with the provisions of the contract printed on the back thereof. These conditions printed on the back are evidently general rules governing the sale of flour and feed, adopted by the Southeastern Millers Association, and are intended to apply where the time or period of shipment is not otherwise specified in the contract. The second paragraph of these printed conditions begins with the clause "*Unless otherwise specified* (italics ours), purchases must be ordered out within 30 days from date of contract, with a maximum possible limit of 90 days from date of contract." So that this printed condition, as set out in paragraph 2, fixing a maximum possible limit of 90 days from date of contract, applies *unless it is otherwise specified* in the contract. A reasonable construction to be placed upon this clause of the contract is that this maximum possible limit of 90 days from date of contract will not apply where the parties fix in the face of the contract a time or period of shipment. It is intended, by this paragraph 2, to provide for a limit within which purchases must be ordered out where the contract itself does not provide for such limitation. The remainder of this paragraph provides for carrying charges to be paid by the buyer, under certain conditions, and for certain credits to be given to the buyer, under certain condi-

tions therein specified. We think therefore that there is really no inconsistency in the contract, since *it is otherwise specified* and fixed by the terms of the contract that the time of the shipment should be the months of November and December.

A contract of the precise form of the one before this court was construed by the Supreme Court of Alabama, in the case of Hopkinsville Milling Company *v.* Gwin, 179 Ala. 472 (60 So. 270), except that in the Alabama case it was provided, in the face of the written contract for the sale of the flour, that the date of the shipment was at "buyer's option." On the back of the order appeared the same printed conditions as in the contract now under consideration, viz.: "Unless otherwise specified, purchases must be ordered out within thirty days from date of contract," etc. The suit in that case was by the seller against the buyer, for a breach of contract in declining to order out the flour according to the terms of the contract and to accept the shipment. The judgment was for the defendants, and the plaintiff appealed. It was contended by the plaintiff, the milling company, that the phrase "Buyer's option," written on the face of the order, was substituted for and took the place of the printed provisions on the back, referring to the dates of shipment and of delivery; or in other words, that this order was one within the protection of the printed provision, "Unless otherwise specified," and that the terms and dates of delivery were otherwise specified in this contract. The construction contended for by the vendees, and the one which seems to have been adopted by the trial court, was that the printed condition on the back of the order controlled. The Supreme Court of Alabama reversed the judgment of the court below, and held that the stipulations on the face of the contract governed. See also King *v.* Faist, 161 Mass. 449 (37 N. E. 456).

The time of delivery in the instant case is of the essence of the contract, and it was obligatory upon the buyer to order out the flour within the limit provided by the terms of the contract, i. e. during the months of November and December; and, having failed to do so, it would have no right of action against the defendant. *Gude v. Bailey,* 4 Ga. App. 226 (61 S. E. 135); 35 Cyc. 175 (7); *Augusta Factory Co. v. Mente,* supra; *Henderson Elevator Co. v. North Ga. Milling Co.,* 126 Ga. 279, 281 (55 S. E. 50); *Savannah Ice Co. v. American Transit Co.,* 110 Ga. 142 (35 S. E. 280); Big

Muddy Coal &c. Co. v. St. Louis &c. Coal Co., 176 Mo. App. 407 (158 S. W. 420) ; Beck &c. Co. v. Colorado Milling Co., 52 Fed. 700 (3 C. C. A. 248) ; Cleveland Rolling Mill Co. v. Rhodes, 121 U. S. 256 (7 Sup. Ct. 882, 30 L. ed. 920) ; Norrington v. Wright, 115 U. S. 188 (6 Sup. Ct. 12, 29 L. ed. 366).

Under the construction which we place upon this contract, it being undisputed that the 200 barrels of flour were not ordered out during the months of November and December, the recovery by the plaintiff was not authorized, and a new trial necessarily results.

This question being controlling in the case, it is not necessary to consider the other grounds of the motion for a new trial.

*Judgment reversed. Broyles, P. J., and Bloodworth, J., concur.*